# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY W. LAFFERTY, | : | CIVIL NO. 3:08-CV-1055 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| EDWARD J. KLEM, et al., | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Jeffrey W. Lafferty ("Lafferty") a Pennsylvania state inmate incarcerated at the State Correctional Institution at Mahanoy (SCI-Mahanoy), Frackville, Pennsylvania, originally commenced this civil rights action in the United States District Court for the Eastern District of Pennsylvania naming the following employees of the Pennsylvania Department of Corrections as defendants: Jeffrey Beard ("Beard"), Secretary of the Department of Corrections; Edward Klem ("Klem"), former Superintendent of SCI-Mahanoy; Edward Martin ("Martin"), former Grievance Coordinator at SCI-Mahanoy; Kristen Reisinger ("Reisinger"), former Chief Grievance Officer of the Secretary's Office of Inmate Grievances and Appeals; Rebecca DeSanti ("DeSanti"), SCI-Mahanoy Corrections Facility Maintenance Manager III; and Jeanne MacKnight ("MacKnight"), a SCI-Mahanoy Unit Manager.[1] (Doc. 3.) Defendants filed a motion for change of venue, which was

---

[1] In his brief in opposition to defendants' pending motion for summary judgment (Doc. 44), plaintiff makes several references to defendants "Commonwealth of Pennsylvania" and "Department of Corrections." Neither are named in the complaint (Doc. 3) as a defendant. Consequently, any arguments relating to the Commonwealth of Pennsylvania or the Department of Corrections, and any policies or procedures relating to these entities will not

granted. (Doc. 11.) Thereafter, the matter was electronically transferred to this district. (Doc. 14.) Presently pending is defendants' motion for summary judgment. (Doc. 35.) For the reasons that follow, the motion will be granted.

I. STATEMENT OF FACTS[2]

Lafferty is serving a life sentence. (Doc. 3, at 6.) He was transferred from the State Correctional Institution at Dallas ("SCI-Dallas"), Dallas, Pennsylvania to SCI-Mahanoy in August 2002. He worked as a plumbing apprentice at SCI-Mahanoy from August of 2002 until he was removed by his direct supervisor, Mr. Locke, in 2005. (Doc. 37-2, Declaration of Rebecca DeSanti, Corrections Facility Maintenance Manager III ("DeSanti Decl."), at 3, ¶¶ 4-5.) He alleges that he lost his prison position because defendants stereotyped him as a member of the "Ayran-Brotherhood" gang and accused him of trying to recruit members into that gang. (Doc. 3, at 5.) According to the Corrections Facility Maintenance Manager III[3], Locke "removed Lafferty from the plumbing crew because he was a disruptive influence among the other inmates on the crew. Lafferty behaved as though he was the supervisor and kept telling the other apprentices what to do. At the same time, Lafferty refused to do what

---

be addressed by the court.

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Lafferty, the non-moving party. See infra, Part II.

[3] The facility maintenance manager has overall responsibility for the maintenance department which includes the work crews that provide maintenance and repairs to the prison's plumbing. (Doc. 37-2, DeSanti Decl. at ¶ 2.)

2

Mr. Locke told him to do. Mr. Locke found it impossible to maintain the necessary discipline over the other inmates on the crew while Lafferty was an apprentice." (Doc. 37-2, DeSanti Decl. at ¶ 6.) "Lafferty's lack of cooperation with his supervisor and negative influence upon his fellow apprentices were the only reasons for his removal." (Id. at ¶ 9.) He was not removed because of any gang affiliation. (Id. at 8.) "A report that a prisoner has a gang affiliation does not disqualify him from employment in the maintenance department or in a plumbing apprenticeship." (Id. at 10.)

DeSanti had no involvement in Lafferty's removal from the plumbing apprenticeship. (Doc. 37-2, DeSanti Decl., at 3, ¶ 7.) Since his removal, he has requested that he be taken back as an apprentice. DeSanti has informed him as follows: "there is no lifer vacancy in the plumbing shop at this time; there is a long waiting list of prisoners who wish to be considered for the program; when a vacancy becomes available, [your] application will be given the same consideration as the other lifers whose names are on the waiting list." (Id. at 4, ¶ 12.)

Lafferty also forwarded documents to defendant Martin to review. Defendant Martin offered the following:

> I have had an opportunity to review the documents that you sent to me earlier this week.
>
> Let me begin by reminding you of a basic rule of work. It is always the worker's responsibility to get along with the supervisor. I do not know what the issue of your discussion was with Mr. Locke, and I was not there so I cannot speak to who said what to whom. Suffice it to say, in a confrontation with a supervisor, you lose.
>
> Having said the above, let me tell you some facts that I know about your case. I

> know that you have said that your supervisor told you that you were sent here to finish the program, but that was never coordinated with us or Central office. You were sent here as a promotional transfer, the purpose of which was to get you closer to your home. The staff here worked to accommodate you in getting back into the apprenticeship program. You yourself have expended a significant amount of time and energy into getting into the program. The simple fact appears to be that SCI Dallas wanted to have you moved. You have allowed yourself to become involved in a situation with the supervisor and they took away your job and the participation in the program. I know that you believe you are right in this thing, but the fact remains, the supervisor makes the decisions, not you.
>
> I have spoken to the leadership of the Maintenance Department. They will not, or cannot place you on any plumbing crew. I read the responses you received from both Mr. Millard and Mr. Analosky. Mr. Millard cannot put you on his crew because he already exceeds the quota for lifers and we cannot simply remove one of them to make room for you. Mr Analosky is in a similar situation due to the configuration of his crew.
>
> I note that you believe that you got a bad deal with this situation. The record indicates that you have had a problem with work supervisors in the past. I would suggest you move past this issue and in the future, you can try again.
>
> I offer the above information as an outsider. I am in a position to dispassionately review the information and tell you what I see. If we could send you back to SCI Dallas we would; however, as you know, Central Office has previously disapproved our attempt to transfer you. I spoke with them as recently as this week and they again said that if SCI Dallas does not have room for you in their program, they will not approve sending you back.

(Doc. 44, at 10-11.)

Lafferty also takes issue with his placement in a more secure cell block. He contends that he was moved "to a level 4 block" because he was an "Aryan Brotherhood member and skin head and a risk to security." (Doc. 26 at 2.) He also asked defendant Martin to look into the transfer. Martin responded that he had "spoken with Ms. MacKnight regarding your transfer. She advises me that your move was predicated by your behavior with regard to

4

recruiting members to your beliefs. The staff opinion was that you were attempting to influence younger inmates and that was the reason for the transfer." (Doc. 44, at 11.)

His only request for relief is that he be transferred back to SCI-Dallas. (Doc. 3, at 5.)

## II. STANDARD OF REVIEW

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. DISCUSSION

In order to prevail on a § 1983 claim, a plaintiff must establish that: (1) the alleged wrongful conduct was committed by a person acting under color of state law, and (2) the conduct deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000); Schiazza v. Zoning

5

Hearing Bd., 168 F. Supp. 2d 361, 372 (M.D. Pa. 2001).

   A.   Loss of Prison Employment

"A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); see Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Rode, 845 F.2d at 1207-08. Liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); Rode, 845 F.2d at 1207. To maintain a claim for supervisory liability, plaintiff "must show: 1) that the supervising official personally participated in the activity; 2) that the supervising official directed others to violate a person's rights; or 3) that the supervising official had knowledge of and acquiesced in a subordinate's violations." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Lafferty seeks to hold defendants Beard, Klem, DeSanti and MacKnight responsible for the loss of his job. It is clear that his attempt to impose liability on these defendants is based solely on their roles as supervisors, not as active participants.[4] Hence, defendants are entitled

---

[4] Beard is the Secretary of the Department of Corrections, Klem is the former Superintendent, DeSanti is a Facility Maintenance Manager III, and MacKnight is a Unit Manager.

6

to an entry of summary judgment on this claim.

He fares no better with respect to defendant Reisinger. All indications are that her involvement was limited to her role as a grievance officer. Participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement. See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Croom v. Wagner, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01-2468, 200 6 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern." (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983))). The motion for summary judgment will be granted with respect to this defendant.

Nor can Lafferty hold defendant Martin responsible for the loss of his job. At the request of plaintiff, defendant Martin simply reviewed relevant correspondence and

documents and rendered his opinion on the facts surrounding the incident. (Doc. 44, at 10-11.) He had no personal involvement in the decision to remove Lafferty from his employment.

Significantly, even if Lafferty had established defendants were personally involved in the loss of his employment, they would still be entitled to an entry of summary judgment. An inmate does not have a protected liberty or property interest in continued prison employment. James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975). "[A]n inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest." Wilkins v. Bittenbender, 2006 WL 860140 *9 (M.D.Pa. March 31, 2006) (Conaboy, J.) (quoting Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir.1995)). See also Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir.1989) (holding inmates have no property interest in continuing in work-release program); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir.1986) (finding Constitution does not create a property interest in prison employment).[5]

---

[5] It is recognized that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if retaliatory in nature in that they are motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). In the matter *sub judice*, Lafferty makes no claim of retaliation. However, even if the court liberally construed the complaint to include such a claim, plaintiff fails to meet the threshold requirement of establishing personal involvement. Further, if he were to establish personal involvement, because of the "deference" courts should afford prison officials, the prison officials would in all likelihood still prevail based upon facts of record which establish that Lafferty was removed from prison employment because of incompatibility with his supervisor, not because of any gang involvement. Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

B. <u>Transfer Within the Prison</u>

It has long been held that the Due Process Clause does not provide a federal liberty interest guaranteeing housing in a particular penal institution or providing protection against transfer from one institution to another within the state prison system. <u>Meachum v. Fano</u>, 427 U.S. 215, 224-225 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236 (1976). Nor is there an inherent due process right not to be transferred to another cell within in a prison. <u>Kimball v. Walters</u>, 2007 WL 87897, 12 (M.D.Pa. Jan.9, 2007). It is well-established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. See <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221-22 (2005) (the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum</u>, 427 U.S. at 224-25; <u>Montayne</u>, 427 U.S. at 243; <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9 (1976). Moreover, the custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." <u>Meachum</u>, 427 U.S. at 225. Consequently, Lafferty's claim that his rights were violated when he was transferred within the prison from a less secure to a more secure block is without merit. Defendants are entitled to an entry of summary judgment on this claim.

## IV.  CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (Doc. 35) will be granted in its entirety.  An appropriate order follows.


BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court


Dated:    November 30, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY W. LAFFERTY, : CIVIL NO. 3:08-CV-1055
    Plaintiff :
 : (Judge Munley)
v. :
 :
EDWARD J. KLEM, et al., :
    Defendants :

## ORDER

**AND NOW**, to wit, this 30th day of November 2009, upon consideration of defendants' motion for summary judgment, and in accordance with the foregoing memorandum, it is hereby **ORDERED** that:

1. Defendants' motion for summary judgment (Doc. 35) is **GRANTED**.

2. The Clerk of Court is directed to **ENTER JUDGMENT** in favor of defendants and against Plaintiff.

3. The Clerk of Court is further directed to **CLOSE** this case.

4. Any appeal from this order is **DEEMED** frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

                                                  BY THE COURT:

                                                  s/James M. Munley
                                                  **JUDGE JAMES M. MUNLEY**
                                                  **United States District Court**